IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | CASE NO. 1:11-cv-01549 LJO BAM |
| Plaintiff, | ORDER ON DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT OR A MORE DEFINITE STATEMENT |
| vs. | |
| ALIA CORPORATION, | (Doc. 6) |
| Defendant. | |

In this case, the United States Equal Employment Opportunity Commission ("EEOC") alleges that Defendant Alia Corporation ("Alia") subjected Derrick Morgan ("Morgan"), a former employee, to adverse employment actions because of his mental impairments. Now pending before the Court is Alia's motion to dismiss or, in the alternative, for summary judgment or a more definite statement. Alia argues that this action should be dismissed because the EEOC failed to conciliate in good faith prior to filing suit. The EEOC has opposed the motion, and Alia has filed a reply. Upon careful consideration of the parties' submissions and the entire record, the Court issues the following order.

I.   **BACKGROUND**[1]

Alia manages several McDonald's restaurants in California's Central Valley, including the Oakhurst, California location at which Morgan was employed until mid-2009. On October 20, 2009, Morgan lodged a Charge of Discrimination against Alia with the EEOC. Morgan alleged that he was "demoted, constructively discharged, and subjected to different terms and conditions of employment because of [his] disability" in violation of the Americans with Disabilities Act of 1990 ("ADA"). (Doc. 19, Pl.'s Opp'n, Ex. A.)

On October 23, 2009, the EEOC initiated its investigation into the matter and notified Alia of Morgan's claim. Alia responded that it was never aware that Morgan had a disability of any kind and

---

[1] The following facts are derived in part from evidence submitted by the parties in connection with this motion. Examination of the parties' evidence for the purpose of this motion is proper for the reasons set forth in Section A of the Court's discussion.

1

denied discriminating against Morgan on that basis. Alia explained that it had purchased the Oakhurst location in January 2009, and after two months it became apparent that Morgan's job performance was inadequate. As a result, Alia modified Morgan's job responsibilities and reduced his pay accordingly. Approximately eight weeks after the modification, Morgan informed Alia that he had been hired by the local Von's grocery store; that he could no longer work his schedule at McDonald's; but that he would remain "on call" and let Alia know of any developments. Alia asserted that after 30 days had passed without hearing from Morgan, the company assumed that he had quit.

On June 22, 2011, the EEOC issued a Letter of Determination stating that there was reason to believe that Morgan was discriminated against "because of his disability and/or a perceived disability" and invited the parties to begin conciliation efforts. (Doc. 10, Decl. of Brendan M. Brownfield, Ex. G.) Two days later, EEOC Investigator Julio Espino ("Investigator Espino") sent Alia a draft conciliation proposal, which suggested that Alia pay $304,178.53 in damages, revise its disability policies, provide ADA training for its employees, hire an equal employment consultant, post notice of the settlement, and agree to certain reporting requirements.

On June 28, 2011, Cathy Arias, Alia's counsel, contacted Investigator Espino to obtain further information regarding Morgan's claim. Defense counsel asked Investigator Espino to identify all the facts, witnesses, and documents supporting the EEOC's reasonable cause determination, including the exact nature of Morgan's alleged disability. Defense counsel asserts that Investigator Espino refused to disclose Morgan's disability or any other substantive information regarding the basis of the EEOC's reasonable cause determination. Investigator Espino, on the other hand, asserts that he does not recall defense counsel asking for information on Morgan's specific disability and maintains that he invited counsel to submit any questions or concerns in writing.

On July 7, 2011, a conciliation conference was held. After a brief telephone conversation with Morgan, Investigator Espino asked Alia's counsel at the conference, Michael Pagnozzi, whether Alia would agree to the EEOC's draft conciliation proposal. Defense counsel responded that Alia was not prepared to accept the EEOC's terms or make any counteroffer without first knowing what Morgan's disability was. After some discussion, Investigator Espino showed defense counsel a copy of the Letter of Determination, stated that Morgan had a perceived disability, and noted that one of the managers at

the Oakhurst restaurant had acknowledged that Morgan was disabled. Alia subsequently extended a settlement offer of $5,000, but Morgan rejected the offer.

Defense counsel asserts that at that point, the conciliation meeting came to an end. However, according to Investigator Espino, the EEOC made a counteroffer of $199,178.53. Investigator Espino asserts that defense counsel rejected the offer and stated that the EEOC should just go ahead and issue the right to sue. Investigator Espino states that he attempted to keep the negotiations open, reminding defense counsel that a counteroffer from Alia was necessary in order to continue conciliation efforts. According to Investigator Espino, defense counsel repeated that the EEOC should just go ahead and issue the right to sue and then left.

On July 11, 2011, the EEOC served Alia a Notice of Conciliation Failure. The correspondence provided, in relevant part:

> The Commission presented [Alia] with a proposal for resolution containing suggested monetary and injunctive relief and engaged in good faith efforts to negotiate the terms of an Agreement to resolve the charge at issue. The negotiations resulted in [Alia's] attorney proposing monetary relief far below the amount EEOC suggested as appropriate and making no offer of injunctive relief at all. Ultimately, [Alia's] attorney indicated to [the EEOC] that the parties were "not going to get anywhere" and [Alia] was unwilling to make any further offers during the conference.
>
> Given [Alia's] position that it would make no further counteroffers, as well as the fact that the parties remain very far apart on all terms of relief, further efforts to resolve this charge in the conciliation process would be futile.

(Doc. 19, Ex. G.)

On September 13, 2011, the EEOC initiated this action for monetary damages and injunctive relief pursuant to Title I of the ADA and Title I of the Civil Rights Act of 1991 ("Civil Rights Act"). The complaint discloses that Morgan is disabled due to mental impairments that substantially limit him with respect to several major life activities, including "learning, speaking and brain function." (Doc. 1, Compl., ¶ 13.) Furthermore, on September 14, 2011, the EEOC issued a press release relating to this lawsuit and identified Morgan's disability as cerebral palsy.

Alia now moves to dismiss this action. Alia argues that this action should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because the EEOC's failure to conciliate in good faith prior to filing suit deprives this Court of subject matter jurisdiction. In the alternative, Alia contends that if good faith conciliation is not a jurisdictional requirement, but rather an element of the EEOC's claims:

3

(a) dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6); or (b) summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the Court looks beyond the pleadings.  Finally, in the event that the Court declines to dismiss this action or grant summary judgment in Alia's favor, Alia requests a more definite statement under Federal Rule of Civil Procedure 12(e) with respect to the nature and extent of Morgan's disability.

## II.     LEGAL STANDARDS

### A.     Lack of Subject Matter Jurisdiction

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is a challenge to the court's subject matter jurisdiction.  "Federal courts are courts of limited jurisdiction," and "[i]t is to be presumed that a cause lies outside this limited jurisdiction."  Kokkonen v. Guardian Life Ins. of Am., 511 U.S. 375, 377 (1994).  The party asserting federal jurisdiction carries the burden of establishing the contrary.  Id.

A jurisdictional attack pursuant to Rule 12(b)(1) may either be facial or factual.  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted).  In a facial attack, the jurisdictional challenge is confined to the allegations in the complaint.  See Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).  "[T]he challenger asserts that the allegations in [the] complaint are insufficient on their face to invoke federal jurisdiction."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  In resolving the issue, the court assumes that the allegations are true and draws all reasonable inferences in the plaintiff's favor.  Wolfe, 392 F.3d at 362.

"By contrast, in a factual attack, the challenger disputes the [very] truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  Safe Air, 373 F.3d at 1039.  In resolving this type of challenge, the court "need not presume the truthfulness of the plaintiff's allegations."  Id. (citation omitted).  Instead, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  Id. (citations omitted).  Once the moving party has made a factual challenge by presenting affidavits or other evidence, it "becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction."  Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1121 (9th Cir. 2009) (citation omitted).

4

### B.     Failure to State a Claim

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the legal sufficiency of a claim presented in the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Where there is a "lack of a cognizable legal theory" or an "absence of sufficient facts alleged under a cognizable legal theory," dismissal under Rule 12(b)(6) is proper. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). While "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). Naked assertions, "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. See Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In deciding a motion to dismiss under Rule 12(b)(6), the court accepts the factual allegations of the complaint as true and construes the pleadings in the light most favorable to the party opposing the motion. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, the court may disregard allegations that are contradicted by matters properly subject to judicial notice or by exhibit. Id. The court may also disregard allegations that are "conclusory" or are the product of unreasonable deductions and inferences. Id. Finally, if the court concludes that dismissal under Rule 12(b)(6) is warranted, the court should not dismiss the complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990).

### C.     More Definite Statement

Prior to filing a responsive pleading, a party may move under Federal Rule of Civil Procedure 12(e) for a more definite statement of a pleading if it "is so vague or ambiguous that the party cannot

reasonably prepare a response." Fed. R. Civ. P. 12(e). The purpose of Rule 12(e) is to provide relief from a pleading that is unintelligible, not one that is merely lacking detail. Neveau v. City of Fresno, 392 F. Supp. 2d 1159, 1169 (E.D. Cal. 2005). Where the complaint is specific enough to appraise the responding party of the substance of the claim being asserted or where the detail sought is otherwise obtainable through discovery, a motion for a more definite statement should be denied. See Famolare, Inc. v. Edison Bros. Stores, Inc., 525 F. Supp. 940, 949 (E.D. Cal. 1981) ("Due to the liberal pleading standards in the federal courts embodied in Federal Rule of Civil Procedure 8(e) and the availability of extensive discovery, the availability of a motion for a more definite statement has been substantially restricted."). Thus, motions pursuant to Rule 12(e) are generally "viewed with disfavor and are rarely granted[.]" Sagan v. Apple Computer, Inc., 874 F. Supp. 1072, 1077 (C.D. Cal. 1994).

### D. Summary Judgment

Summary judgment is appropriate when the pleadings, the disclosure materials, the discovery, and the affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party. Id.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing Celotex, 477 U.S. at 323).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of

material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." FTC v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in the original). The nonmoving party must go beyond the allegations set forth in its pleadings. See Fed. R. Civ. P. 56(c). "[B]ald assertions or a mere scintilla of evidence" will not suffice. Stefanchik, 559 F.3d at 929. Indeed, the mere presence of "some metaphysical doubt as to the material facts" is insufficient to withstand a motion for summary judgment. Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First National Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. That remains the province of the jury. See Anderson, 477 U.S. at 255. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Id. Inferences, however, are not drawn out of the air; the nonmoving party must provide a factual predicate from which the inference may justifiably be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

### III. DISCUSSION

#### A. Threshold Issues

##### 1. Conciliation as a Jurisdictional Requirement

The first threshold issue is whether conciliation is a jurisdictional requirement for filing suit under the ADA or whether it is merely an element of an ADA claim. Alia contends that conciliation is jurisdictional in nature and therefore the EEOC's failure to conciliate in good faith prior to filing suit warrants dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. The EEOC, on the other hand, argues that conciliation is merely an element of an ADA claim and therefore any challenge to its conciliation efforts is properly analyzed under Rule 12(b)(6) for failure to state a claim, not as a jurisdictional attack under Rule 12(b)(1).

"Title I of the ADA invokes the same 'powers, remedies and procedures' as those set forth in Title VII." Walsh v. Nevada Dep't of Human Res., 471 F.3d 1033, 1038 (9th Cir. 2006) (quoting 42

U.S.C. § 12117(a)).  Under Title VII, the EEOC is required to complete several administrative steps prior to initiating a civil action.  See 42 U.S.C. § 2000e-5(b); EEOC v. Pierce Packing Co., 669 F.2d 605, 607 (9th Cir. 1982).  One such step consists of an attempt by the EEOC at eliminating the alleged unlawful employment practice "by conference, *conciliation*, and persuasion."  42 U.S.C. § 2000e-5(b) (emphasis added).

The Ninth Circuit has held that conciliation is a jurisdictional condition precedent to suit, and therefore a court lacks subject matter jurisdiction over an action if the EEOC failed to conciliate prior to filing suit.  Pierce Packing, 669 F.2d at 608-09.  The Ninth Circuit's characterization of conciliation as a jurisdictional requirement is premised on Congress' preference for achieving Title VII's objectives through voluntary means rather than through litigation.  See id. at 608; see also Moore v. San Jose, 615 F.2d 1265, 1271 (9th Cir. 1980) ("In enacting Title VII, Congress has specifically endorsed voluntary compliance and settlement as the preferred means of achieving the elimination of unlawful employment discrimination.").  As the Ninth Circuit explained:

> The [EEOC's] functions of investigation, decision of reasonable cause and conciliation are crucial to the philosophy of Title VII.  It is difficult to believe that Congress directed the [EEOC] to make a determination of reasonable cause on the merits of a charge and nevertheless contemplated that the [EEOC] could institute such litigation before it makes such a determination.  Similarly, it is difficult to conclude that Congress directed the [EEOC] to conciliate and then authorize[d] it to initiate adversary proceedings before the possibility of voluntary compliance has been exhausted.

Pierce Packing, 669 F.2d at 608 (quoting EEOC v. E. I. Du Pont de Nemours & Co., 373 F. Supp. 1321, 1333 (D. Del. 1974).

Recent developments in the law, however, have undermined the Ninth Circuit's rationale for characterizing conciliation as jurisdictional.  The Supreme Court has implicitly rejected the notion that Congress' preference for conciliation, while important, is a sufficient basis in of itself for concluding that Congress intended the requirement to be jurisdictional.  See Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1248 n.9, 176 L. Ed. 2d 18 (2010) ("We do not agree that a condition should be ranked as jurisdictional merely because it promotes important congressional objectives."); but see Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (indicating that congressional policy may be relevant when *combined* with other factors).

The Supreme Court has been explicit that a statutory requirement or limitation is jurisdictional

8

only where there is "*clear* indication that Congress wanted the rule to be jurisdictional." Henderson v. Shinseki, 131 S. Ct. 1197, 1203, 179 L. Ed. 2d 159 (2011) (emphasis added) (internal quotation marks and citation omitted).  In Arbaugh v. Y&H Corp., 546 U.S. 500 (2006), the Supreme Court addressed the question of whether Title VII's definition of "employer" limits a court's jurisdiction or whether it simply relates to the elements of a viable claim.[2]  After lamenting the "less than meticulous" use of the word "jurisdiction" in past judicial opinions, the Supreme Court enunciated a "readily administrable bright line" for determining whether a statutory requirement or limitation is jurisdictional in nature, as opposed to an element of a claim:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, the courts and litigants will be duly instructed and will not be left to wrestle with the issue.  But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

Id. at 510, 515-16 (internal citation omitted).  The Supreme Court concluded that Title VII's limitation on the definition of "employer" is not jurisdictional in nature because the statutory provision in which the definition is found "does not speak in jurisdictional terms or in any way refer to the jurisdiction of district courts."  Id. at 515 (citation omitted).

In discerning whether Congress has clearly expressed an intent to make a statutory requirement or limitation jurisdictional, courts must look to the requirement's text.  As Arbaugh clearly illustrates, if the statutory requirement is not "clearly labeled jurisdictional" or "located in a jurisdiction-granting provision," there is strong evidence that Congress did not intend the requirement to be jurisdictional. Reed Elsevier, 130 S. Ct. at 1247.  See Henderson, 131 S. Ct. at 1204-05 ("If Congress had wanted the 120-day time [limit] to be treated as jurisdictional, it could have cast that provision in [jurisdictional] language[.]").  In addition, courts must consider the requirement's context.  See Henderson, 131 S. Ct. at 1203.  For example, where the Supreme Court has historically treated a requirement as jurisdictional, and Congress has not disturbed that treatment, the statutory requirement may "'speak in jurisdictional terms' even absent a 'jurisdictional' label."  Reed Elsevier, 130 S. Ct. at 1248.  See Bowles v. Russell, 551 U.S. 205 (concluding that 28 U.S.C. § 2107, which requires parties in a civil action to file a notice

---

[2] Under Title VII, the term "employer" generally means "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b).

9

of appeal within 30 days of judgment, is jurisdictional in light of the requirement's historical treatment by the Supreme Court and Congress).

The Supreme Court's decision in Reed Elsevier is illustrative of all these principles. There, the Supreme Court confronted the question of whether the registration requirement of the Copyright Act, 17 U.S.C. § 411(a), constituted a limitation on a court's jurisdiction or a precondition to filing suit for infringement of unregistered works. In finding that the registration requirement did not limit a court's jurisdiction, the Supreme Court emphasized four points. First, despite the reference to jurisdiction in § 411(a), the provision does not clearly state that the requirement is jurisdictional. Reed Elsevier, 130 S. Ct. at 1245 (quoting Arbaugh, 546 U.S. at 515). Second, the requirement is located in a provision "separate" from those granting federal courts subject-matter jurisdiction over [the] claims. Id. at 1245-46 (citing Arbaugh, 546 U.S. at 514-15). Third, when viewed in the context of the overall framework of the Copyright Act, the requirement is riddled with exceptions such that it is unlikely that Congress "ascribe[d] jurisdictional significance" to it. Id. at 1246. Fourth, the registration requirement is not the type of limitation that either the Supreme Court or Congress has historically treated as jurisdictional in nature. See id. at 1247-48.

Applying the four factors emphasized in Reed Elsevier here, there is no "clear indication" that Congress intended Title VII's conciliation requirement to be jurisdictional.[3] Henderson, 131 S. Ct. at 1203. The statutory provisions that pertain to conciliation, 42 U.S.C. §§ 2000e-5(b) and 2000e-5(f)(1), do not clearly indicate that conciliation is a jurisdictional requirement. While § 2000e-5(f)(1) speaks of conciliation as a precondition to filing suit, it does not explicitly state that a court's jurisdiction rests on the satisfaction of this condition. "A statutory condition that requires a party to take some action before filing 'a lawsuit is not automatically a jurisdictional prerequisite to suit.'" Reed Elsevier, 130 S. Ct. at 1246 (quoting Zipes, 455 U.S. at 393). Indeed, the statutory provision that does confer federal courts jurisdiction over Title VII claims makes no reference to the conciliation requirement at all. See

---

[3] Notably, in its own more recent discussions of statutory requirements and subject matter jurisdiction, the Ninth Circuit has applied the factors emphasized in Reed Elsevier. See Leeson v. Transamerica Disability Income Plan, No. 10-35380, 2012 U.S. App. LEXIS 1248 (9th Cir. Jan. 23, 2012) (holding that a party's status as a plan participant, as defined by 29 U.S.C. § 1132(a)(1)(B), did not raise a jurisdictional question); Payne v. Peninsula Sch. Dist., 653 F.3d 863 (9th Cir. 2011) (en banc) (holding that the exhaustion requirement of the Individuals with Disabilities Education Act ("IDEA") is not jurisdictional in nature).

42 U.S.C. § 2000e-5(f)(3).

Moreover, when viewed in the context of Title VII's framework, the conciliation requirement does not clearly "speak in jurisdictional terms." Reed Elsevier, 130 S. Ct. at 1246. Accepting the fact that conciliation is "crucial to the philosophy of Title VII," Pierce Packing, 669 F.2d at 608, there is no indication that this importance is "ascribe[d] jurisdictional significance." Reed Elsevier, 130 S. Ct. at 1246. In fact, the language of § 2000e-5(f)(1) seems to suggest otherwise. Under § 2000e-5(f)(1), a court has discretion to stay any Title VII action "pending . . . further efforts of the [EEOC] to obtain voluntary compliance." If Congress intended conciliation to serve as a complete jurisdictional bar on the court's ability to hear a Title VII action, it seems inconsistent that Congress would afford a court discretion to determine whether a stay, as opposed to dismissal, is an appropriate remedy for rectifying incomplete conciliation. "Without jurisdiction the court cannot proceed *at all* in any cause." Ex parte McCardle, 74 U.S. 506, 515 (1869) (emphasis added). See EEOC v. Zia Co., 582 F.2d 527, 533 (10th Cir. 1978) ("The inquiry into the duty of 'good faith' [conciliation] on the part of the EEOC is relevant to whether the court should entertain the claim, or stay the proceedings for further conciliation efforts, not its powers over the cause.").

Lastly, there is no long line of Supreme Court precedent holding that conciliation is the type of requirement that has historically been treated as jurisdictional in nature. See generally Union Pacific Railroad Co. v. Brotherhood of Locomotive Engineers and Trainmen General Comm. of Adjustment, 130 S. Ct. 584, 175 L. Ed. 2d 428 (2009) (requirement under the Railway Labor Act that parties must attempt "settlement in conference" to resolve minor disputes before resorting to arbitration before the National Railroad Adjustment Board is not jurisdictional). Nor is there any indication that Congress itself has historically treated conciliation as jurisdictional.

In sum, Title VII's conciliation requirement is a precondition to suit, but it is not jurisdictional. To the extent that Pierce Packing holds otherwise, the holding has been fatally undermined and can no longer be reconciled with current Supreme Court jurisprudence.[4] See EEOC v. Agro Distribution LLC,

---

[4] The Court does not reach this decision lightly. A circuit court's decision remains binding authority unless it is "clearly irreconcilable" with an intervening decision by a higher court. Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003). Nevertheless, as the Ninth Circuit itself has acknowledged, "[a] prior decision may have been undercut by higher authority to such an extent that it has been effectively overruled by such higher authority and hence is no longer binding on district

555 F.3d 462, 469 (5th Cir. 2009) ("Following [Arbaugh], we conclude that the EEOC's conciliation requirement is a precondition to suit but not a jurisdictional prerequisite. To the extent that [our] older cases . . . hold that failure to conciliate can deprive courts of subject matter jurisdiction, they have been implicitly overturned by Arbaugh[.]"). But see U.S. EEOC v. Dillard's Inc., Case No. 08-CV-1780-IEG (PCL), 2011 U.S. Dist. LEXIS 76206, at *13-16 (S.D. Cal. 2011) (declining to overrule Pierce Packing in light of the "clear trend among sister courts in this Circuit" that Title VII's conciliation requirement is jurisdictional in nature).

Therefore, Alia's pending motion does not raise a question of the Court's jurisdiction; rather, it raises an affirmative defense with respect to the sufficiency of the EEOC's conciliation efforts. While ordinarily this would properly be the subject of a motion to dismiss under Rule 12(b)(6), both parties were on notice that the Court could convert this motion into one for summary judgment and thus have provided the Court with what appears to be all the evidence relevant to this matter. Accordingly, the Court will evaluate the merits of Alia's motion in accordance with summary judgment standards. See Fed. R. Civ. P. 12(d).

## 2. Standard for Evaluating the EEOC's Conciliation Efforts

The second threshold issue is what standard should be applied for evaluating the sufficiency of the EEOC's conciliation efforts. The EEOC asserts that the Court should apply the standard adopted by the Sixth Circuit, which is highly deferential to the EEOC. See EEOC v. Keco Industries, Inc., 748 F.2d 1097, 1102 (6th Cir. 1984). Alia counters that the Court should apply the more stringent standard adopted by the Fifth Circuit in EEOC v. Klinger Elec. Corp., 636 F.2d 104, 107 (5th Cir. 1981). Alia maintains that the adoption of a more stringent standard is necessary "in order to avoid the significant inequity that would result if the EEOC's conduct is accorded significant deference." (Doc. 7, Def.'s Mem. of P. & A., at 10.)

"There is a split among the [circuit courts] regarding the proper standard for reviewing whether the EEOC has attempted to conciliate in good faith." EEOC v. Timeless Investments, Inc., 734 F. Supp. 2d 1035, 1052 (E.D. Cal. 2010). The Second, Fifth, and Eleventh Circuits require courts to evaluate "the reasonableness and responsiveness of the EEOC's conduct under all the circumstances." EEOC

---

judges[.]" Id. at 899. This appears to be such a case.

12

v. Asplundh Tree Expert Co., 340 F.3d 1256, 1259 (11th Cir. 2003) (quoting Klinger, 636 F.2d at 107). Under this standard, the EEOC must at least: (1) outline to the employer the reasonable cause for its belief that a violation of the law has occurred; (2) offer an opportunity for voluntary compliance; and (3) respond in a reasonable and flexible manner to the reasonable attitudes of the employer. Id. (citing Klinger, 636 F.2d at 107). See EEOC v. Johnson & Higgins, Inc., 91 F.3d 1529, 1534 (2d Cir. 1996). The Sixth and Tenth Circuits, on the other hand, appear to have adopted a standard that is much more deferential to the EEOC. Under this standard, a court "should only determine whether the EEOC made an *attempt* at conciliation. The form and the substance of those conciliations is within the discretion of the EEOC . . . and is beyond judicial review." Keco, 748 F.2d at 1102 (emphasis added). See also Zia, 582 F.2d at 533 ("[W]e agree that a court should not examine the details of the offers and counteroffers between the parties, nor impose its [own] notions of what the agreement should provide[.]").

The Ninth Circuit has not weighed-in on the issue. However, district courts in this circuit have generally tilted toward the approach taken by the Sixth and Tenth Circuits, affording the EEOC wide deference in discharging its duty to conciliate. See EEOC v. Cal. Psychiatric Transitions, Inc., 644 F. Supp. 2d 1249, 1273 (E.D. Cal. 2009) ("Cal. Psych. I") (applying the deferential standard expressed by the Sixth Circuit in Keco); U.S. EEOC v. Hometown Buffet, Inc., 481 F. Supp. 2d 1110, 1113-14 (S.D. Cal. 2007) (same); EEOC v. Grimmway Enters., Inc., Case No. CV F 06-0561 LJO DLB, 2007 U.S. Dist. LEXIS 45268, at *16-18 (E.D. Cal. June 12, 2007) (same); EEOC v. Gold River Operating Corp., 2:04-cv-01349-LRL, 2007 U.S. Dist. LEXIS 24597, at *14-17 (D. Nev. Mar. 30, 2007) (same); U.S. EEOC v. Lawry's Restaurants, Inc., Case No. CV 06-1963 DDP PLAx, 2006 U.S. Dist. LEXIS 55859, at *3 (C.D. Cal. July 14, 2006) (same).

This Court finds no reason to depart from the deferential approach taken by the district courts in the Ninth Circuit. Title VII, as a whole, affords the EEOC substantial deference in discharging its duties. See Hometown Buffet, 481 F. Supp. 2d at 1113-14. In fact, an effort by the U.S. Senate in 1972 to require judicial approval of EEOC settlement agreements was "soundly rejected." EEOC v. Sears, Roebuck & Co., 504 F. Supp. 241, 262 (N.D. Ill. 1980) (citing 118 Cong. Rec. 3807 (Feb. 14, 1972)). Therefore, in evaluating the sufficiency of the EEOC's conciliation efforts in this case, the Court will defer to the judgment of the EEOC and confine its inquiry to whether the EEOC "made an *attempt* at

conciliation." Keco, 748 F.2d at 1102 (emphasis added).  So long as Alia was given "an opportunity to respond to all [the] charges and [to] negotiate settlement[]," the EEOC fulfilled its statutory duty to conciliate in good faith.  EEOC v. Prudential Federal Sav. & Loan Assoc., 763 F.2d 1166, 1169 (10th Cir. 1985) (citation omitted).

      **B.**      **The Merits**

            **1.**      **The EEOC's Conciliation Efforts**

Alia protests that the EEOC failed to conciliate in good faith and that the EEOC's "take-it-or-leave-it" approach to conciliation deprived Alia of a meaningful opportunity to confront, and possibly settle, the claims brought against it.  (Doc. 20, Def.'s Reply, at 5.)  In particular, Alia argues that the EEOC (1) maintained an inflexible negotiating position during conciliation, (2) refused to disclose the exact nature of Morgan's disability despite Alia's requests for such information, and (3) prematurely terminated the parties' conciliation efforts.

As an initial matter, Alia's protest that the EEOC maintained an inflexible negotiating position during conciliation is misguided.  Alia asserts that it was unreasonable for the EEOC to demand near the statutory maximum for compensatory damages and to remain firm on extensive injunctive relief.  However, in assessing whether Alia was afforded an adequate *opportunity* to negotiate settlement, the Court will not wade into the substance of the parties' negotiations; nor will it second-guess the EEOC's negotiating strategy.  See Zia, 582 F.2d at 533 ("[A] court should not examine the details of the offers and counteroffers between the parties, nor [should it] impose its [own] notions of what [an] agreement should provide[.]").  Determining whether an agreement is acceptable is a task for the EEOC, not the Court.  See EEOC v. Canadian Indem. Co., 407 F. Supp. 1366, 1367 (C.D. Cal. 1976) (noting that 42 U.S.C. § 2000e-5(f)(1) provides the EEOC with the final say as to whether a conciliation agreement is acceptable).  Therefore, Alia's discontent with the EEOC's negotiating position does not provide the Court with an appropriate basis for concluding that the EEOC failed to conciliate in good faith prior to filing suit.  See Keco, 748 F.2d at 1102.

Turning to Alia's other two arguments, the record is replete with sharply conflicting evidence with respect to both of those matters.  Alia asserts that its requests for information regarding Morgan's disability were rebuffed on two occasions, once telephonically on June 28, 2011 and again during the

conciliation meeting on July 7, 2011. (Doc. 8, Decl. of Michael Pagnozzi, ¶ 5; Doc. 9, Decl. of Cathy Arias, ¶ 6.) Moreover, Alia asserts that during the conciliation meeting, the EEOC failed to present a counteroffer after Morgan rejected Alia's initial $5,000 settlement offer; that the EEOC did not even attempt to narrow the gap between the parties' negotiating positions; and that the EEOC hastily served Alia with a Notice of Conciliation Failure less than a week later. (See Doc. 8, Pagnozzi Decl., ¶ 9.) In Alia's view, all of this demonstrates that the EEOC failed to meaningfully engage with Alia, thereby making it impossible for Alia to negotiate settlement.

The EEOC, however, offers evidence to the contrary. Investigator Espino asserts that he does not recall Alia's counsel ever asking for information regarding Morgan's disability on June 28, 2011, and that in any event, Alia's counsel failed to submit any written questions or concerns to the EEOC despite being advised of that possibility. (Doc. 19-3, Decl. of Julio Espino, ¶¶ 3-5.) Also, Investigator Espino asserts that during the conciliation meeting on July 7, 2011, he responded to defense counsel's question regarding Morgan's disability by showing counsel a copy of the Letter of Determination, by indicating that Morgan had an actual or perceived disability, and by noting that one of Alia's managers had admitted that Morgan was disabled. (Id. ¶ 10.) According to Investigator Espino and the EEOC, Alia's counsel never raised the issue again.

With respect to the termination of the parties' conciliation efforts, the EEOC maintains that it was Alia's counsel who walked away from the negotiating table, not the EEOC. Investigator Espino asserts that after Morgan rejected Alia's initial $5,000 settlement offer, he countered with an offer of $199,178.53 but Alia's counsel dismissed the offer. (Id. ¶ 14.) Investigator Espino asserts that despite his warning that Alia needed to extend a counteroffer for the negotiations to continue, Alia's counsel stated that the EEOC should just issue the right to sue and then left the meeting. (Id.) The EEOC notes that at no point after did Alia's counsel communicate to the EEOC that additional conciliation efforts might be fruitful or otherwise desirable.

In resolving a motion for summary judgment, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. When viewed in this light, the EEOC's evidence is sufficient to show a genuine issue of material fact as to whether the EEOC conciliated in good faith. If a jury finds Investigator Espino's testimony credible,

it could find that Alia failed to clearly communicate to the EEOC that its lack of knowledge regarding Morgan's disability prevented Alia from negotiating settlement in any meaningful way.  A jury could also find that it was Alia's counsel, not the EEOC, who walked away from the negotiating table and, in effect, terminated the parties' conciliation efforts.  As a whole, then, a jury could reasonably conclude that the EEOC made a good faith attempt at conciliation and therefore was free to file suit when it did. See EEOC v. Bruno's Restaurants, 13 F.3d 285, 289 (9th Cir. 1993) (explaining that the EEOC could have reasonably believed that its efforts to conciliate were sufficient when the defendant was unwilling to engage in any discussion of the claims against it); Keco, 748 F.2d at 1101-02 ("The EEOC is under no duty to attempt further conciliation after an employer rejects its offer.").

Accordingly, Alia's motion for summary judgment is DENIED.[5]

### 2.     Alia's Request for a More Definite Statement

In the alternative to summary judgment, Alia argues that a more definite statement is needed. Alia asserts that (1) the complaint fails to allege the exact nature and extent of Morgan's disability, and (2) the allegation that Morgan was discriminated against "on the basis of his disability and/or on the basis of his perceived disability" is vague and ambiguous.  (Doc. 1, Compl., ¶ 17.)  Alia maintains that until the EEOC clarifies both of these matters, it is simply impossible for Alia to fairly respond to the allegations of the complaint.

As noted above, a motion for a more definite statement is appropriate only when the complaint is unintelligible and a party cannot fairly be expected to frame a response.  See Neveau, 392 F. Supp. 2d at 1169.  Those circumstances are simply not present here.  The EEOC alleges in its complaint that Morgan is disabled "due to having mental impairments which substantially limit him in several major life activities including learning, speaking and brain function." (Doc. 1, Compl., ¶ 13.)  Although this allegation does not provide the precise diagnosis of Morgan's disability, it is specific enough to fairly apprise Alia of the basis of the EEOC's claims.  That is all that is required at this early juncture.  To the

---

[5] The Court notes that even if it had found that the EEOC failed to conciliate in good faith, summary judgement would not have been the appropriate remedy.  Where, as here, the EEOC made some form of attempt at conciliation, courts generally refrain from granting summary judgment as a sanction.  See Klinger, 636 F.2d at 107.  The preferred course is to stay the case pursuant to 42 U.S.C. § 2000e-5(f)(1) so that the parties may resume and complete conciliation efforts.  Id.; Zia, 582 F.2d at 533 ("The inquiry into the duty of 'good faith' on the part of the EEOC is relevant to whether the court should . . . stay the proceedings for further conciliation efforts[.]").

extent that Alia seeks more detail regarding Morgan's medical condition, the proper tool for obtaining such is discovery, not a motion for a more definite statement. See Neveau, 392 F. Supp. 2d at 1169 ("If the detail sought by a motion [for a more definite statement] is obtainable through discovery, [it] should be denied.") (citation omitted).

In addition, the allegation that Morgan was discriminated against "on the basis of his disability and/or on the basis of his perceived disability" is not so ambiguous that it precludes Alia from fairly responding to the complaint. The import of the allegation is quite clear: the EEOC asserts that Morgan is disabled due to certain mental impairments and alleges that he was discriminated against because of *this* disability or because he was perceived to have *a* disability. Either theory supports a viable claim under the ADA. See 42 U.S.C. § 12102(1) (defining "disability" under the ADA as an actual physical or mental impairment *or* being regarded as having a physical or mental impairment). The EEOC may rely on discovery to explore the actual extent to which Alia had knowledge of Morgan's disability, and Alia may not use a motion for a more definite statement to prematurely test the merits of the EEOC's case by forcing it to choose between its theories of liability. See Palm Springs Medical Clinic, Inc., v. Desert Hospital, 628 F. Supp. 454, 464-65 (C.D. Cal. 1986) ("A motion for a more definite statement should not be used to test an opponent's case by requiring him to allege certain facts or retreat from his allegations.") (citation omitted).

For all of these reasons, Alia's request for a more definite statement is DENIED.

## IV.   CONCLUSION

In accordance with the above, this Court:

1. DENIES Alia's motion to dismiss or, in the alternative, for summary judgment or a more definite statement in its entirety; and

2. ORDERS Alia to file an answer within fourteen days of the date of this order. See Fed. R. Civ. P. 12(a)(4)(A). IT IS SO ORDERED.

**Dated:   February 6, 2012**            /s/ Lawrence J. O'Neill
                                   UNITED STATES DISTRICT JUDGE